FILED
October 20, 2021
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _____IR_____
           DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

**BRENT MCCAIN,**
   *Plaintiff,*

**v.**

              Case No. 6-21-CV-00442

**OFFICER FABIAN J. KLECKA III and**
**The CITY OF WACO.**
   *Defendant*.

## PLAINTIFF'S AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Brent McCain, by and through his attorneys, complaining of Defendant, Officer Fabian J. Klecka III and the City of Waco, and respectfully allege as follows:

## INTRODUCTION

1. Brent McCain, a lawful citizen, brings this civil action for damages against Former Waco Police Officer Fabian J. Klecka III and the City of Waco. Defendant Officer harassed, threatened, and arrested Plaintiff for his reasonable and lawful exercise of his constitutional rights. Defendant Officer willfully ignored the law when he detained Plaintiff at taser-point and then arrested him. Defendant Officer's unlawful detention and objective use of blatant excessive force against Plaintiff clearly violates Mr. McCain's rights afforded to him under of the United States Constitution. Defendant City had a policy or practice of fostering and encouraging these unconstitutional behaviors from its Officers. Defendant City was also aware that Defendant Officer had an extensive disciplinary history arising from his interactions with the public. Defendant City knew, or should have known, of these acts that were the drive force behind the violations of Mr. McCain's constitutional rights. Mr. McCain was harmed and seeks recovery in this lawsuit.

## JURISDICTION AND VENUE

2. This is a civil rights action for relief pursuant to 42 U.S.C. § 1983 for damages based upon the violations by Defendants of the rights secured to Plaintiff under the United States Constitution.

3. This Court has Jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1331 (in that this action poses a federal question, as it arises under the Constitution).

4. The events that give rise to this lawsuit took place in the City of Waco, County of McLennan, State of Texas.

5. Venue is appropriate in the Western District of Texas pursuant to 28 U.S.C § 1391(b) since the acts providing the legal basis for this complaint occurred in the City of Waco, County of McLennan, State of Texas.

## PARTIES

6. Plaintiff, BRENT MCCAIN ("Plaintiff"), is a law-abiding citizen of the United States and a resident of the City of Bruceville-Eddy, County of McLennan, State of Texas.

7. Defendant FABIAN J. KLECKA III ("Defendant Officer"), was at all times relevant to the incidents which are the subject of this lawsuit, an officer of the Waco Police Department. The acts of Defendant Officer which are the subject of this lawsuit were undertaken in the regular course of his employment for City of Waco. He is sued both individually and in his official capacity. Upon information and belief, Defendant Officer is a resident of City of Waco, County of McLennan, State of Texas.

8. Defendant CITY OF WACO ("Defendant City"), is a political subdivision of the State of Texas, acting under the color of state law, and is a person for the purposes of a 42 U.S.C. § 1983 action.

## STATEMENT OF FACTS

*A.     Relevant Facts Concerning Plaintiff*

9.     At approximately 12:54 P.M., on September 15, 2020, Plaintiff, a 32-year paramedic, lawfully entered a convenience store in Waco, Texas. Plaintiff proceeded to locate a water bottle for purchase. Plaintiff picked up a water bottle and was searching for a snack before proceeding to the payment counter.

10.    Approximately one minute later, Defendant Officer entered the convenience store. Defendant Officer was a 20-year veteran with the Waco Police Department with a long history of disciplinary conduct. Two years prior, he was investigated by the Texas Rangers after fatally shooting a suspect. In July 2020, he completed an eight-hour course on "Less Lethal Electronic Control Device Training."

11.    Defendant Officer was at the convenience store for a purpose not related to Mr. McCain. Prior to entering the store, Defendant Officer proclaimed the State was "basically violating the Constitution." Defendant Officer, acting under the color of law, approached Mr. McCain, and immediately accosted Plaintiff regarding Plaintiff's lawful choice to refrain from wearing a face covering.

12.    Plaintiff's actions were lawful under the then-current State issued executive order dutifully executed by the Governor of Texas.

13.    Defendant Officer represented to Plaintiff he was in violation of a city ordinance that required a mask, and if he did not leave the premises, he would be cited. At the time Defendant Officer violated Mr. McCain's Constitutional rights, a city ordinance was not in effect requiring individuals to wear a mask. Defendant Officer knew that Plaintiff was not asked to leave the premises by the owner, and that Plaintiff was lawfully at the premises.

14. Plaintiff asked Defendant Officer if he had seen the Governor of Texas' Executive Order regarding the use of facial coverings. Defendant Officer stated, "I don't care what the Governor ordered."

15. Defendant Officer represented Plaintiff was in violation of city ordinance despite Governor Abbott's Executive Order.

16. Plaintiff began to leave the convenience store premises. Plaintiff informed Defendant Officer that he would not be unlawfully detained.

17. With Plaintiff's back to Defendant Officer, Defendant Officer, acting under the color of law, ordered Plaintiff to stop and put his hands up.

18. Defendant Officer proceeded to escalate the situation by drawing a department issued taser from his holster. Defendant Officer was holding the taser in his hand in a ready for use position and pointed the taser at Plaintiff. He threatened Plaintiff, "You move, I'm gonna drop you."

19. Plaintiff reasonably believed the taser device was functional and could deliver painful and disabling electric shock and potentially could cause serious bodily injury. Plaintiff knew this from his training and experience as a paramedic. Plaintiff feared for his safety and well-being.

20. Defendant Officer's conduct is in direct conflict with Waco's de-escalation policies and the then-current Governor Abbot's Executive Order GA-29. Defendant Officer failed to employ measured and ascending tactics to combat alleged resistance from Plaintiff. Defendant Officer's response in pulling the taser was not a measured response to alleged disobedience.

21. Defendant officer is a repeat offender of Defendant City's department policies. Defendant City knew of Defendant's statements and actions, yet chose to allow Defendant Officer

to continue on patrol. Additionally, at the time of the incident, Defendant City allowed for Defendant officer to be on patrol alone. These knowing acts show a deliberate indifference on the account of Defendant City.

22. Because he was alone, Defendant Officer called for backup support and continued to verbally harass Plaintiff for Plaintiff's lawful exercise of his constitutional rights. Defendant Officer told Plaintiff, "It's simple. All you had to do is step outside and put a mask on." Defendant Officer proceeded to degrade Plaintiff.

23. Officers York, Williams, Brisco, Beaudin, and Schronk—all employed by Defendant City—arrived on scene to assist Defendant Officer.

24. Defendant Officer ordered the arriving officers to "take him straight down and cuff him . . . he's under arrest." Shortly after, Plaintiff was in cuffs. Plaintiff was placed under arrest without probable cause or lawful means. Defendant Officer placed Plaintiff in is patrol car.

25. After an unreasonable period of detention and arrest, Defendant Officer released Plaintiff but issued him a written warning for violating a mask ordinance. Plaintiff was not charged with a crime.

26. At all relevant times, Defendant City did not have any ordinance pertaining to the wearing of masks or other face coverings.

27. Defendant City had a resolution pertaining to the wearing of masks or other face coverings. This resolution did not have an enforcement mechanism to allow for the arrest of an individual.

28. Defendant City did not properly train its officers or staff on the proper use or enforcement of this resolution.

29. Defendants' actions are rooted in chilling and curtailing Plaintiff's reasonable exercise of his rights afforded to him under the United States and Texas Constitutions as a lawful citizen.

30. The following day, Officer Beaudin sent a written notice to other officers stating that Plaintiff was the one getting irate, and he was trying to bait Defendant Officer. Defendant Officer attempted to justify his conduct by stating Plaintiff is an "avid cop watch and police watch guy."

31. Defendant City's Police Department investigated the circumstances and determined the allegations against Defendant Officer were "sustained." Defendant Officer was suspended for a day.

32. The investigation found that Defendant Officer, immediately before interacting with Plaintiff, had just informed others "that the city and state are basically violating the constitution by requiring people to wear a mask," but then Defendant Officer "engage[d] negatively" with Plaintiff before Defendant Officer drew his taser. The investigation further found that, "While outside the store, [Defendant Officer] continue[d] to aim [his] taser at [Plaintiff], insult him" before informing dispatch that Plaintiff was being uncooperative.

33. The investigation also found that Defendant Officer's version of events did not comport with the video evidence. Specifically, the video did not show Plaintiff as being hostile, but it did show Defendant Officer being unprofessional.

### B.     *Relevant Facts Concerning Defendant City's De-Escalation Policies*

34. In June 2020, after nationwide protests following the death of George Floyd, the Defendant City's City Council evaluated its own community policing strategies.

35. During the June 16, 2020, City Council regular meeting, Assistant City Manager and former Waco Police Chief Ryan Holt explained the department followed the tenets of 8 Can't Wait, an online campaign urging police departments to follow eight de-escalation policies.

36. Holt acknowledged that using tasers amounted to force, and that tasers were the most used kind of force, with Defendant City police officers using them 37 times in 2019, 30 times in 2018, and 31 times in 2017.

37. On June 9, 2020, Defendant City's Police Department posted on its Facebook page: "The Waco Police Department wants you to know that we recognize these [8 Can't Wait Use of Force Police Suggestions for Law Enforcement] are key to maintaining the trust of our community."[1]

38. The Facebook post goes on to state the following: "Require De-escalation: De-escalation is part of the culture and ongoing training for all department staff at the Waco Police Department. The policy was developed in alignment with the *21st Century Policing Report and concepts of Procedural Justice* that ensures actions by our officers are proportional, legal, authorized, necessary and ethical."

39. The Facebook post further acknowledges a required "use of force continuum" and "Waco PD officers receive extensive de-escalation training and are taught to only use the amount of force that is reasonably necessary in response to the perceived threat."

40. Defendant City's Police Department also had in place General Order Number 31.02, which only authorized the use of force "in response to any person's aggressive or resistance when reasonable to gain control or compliance from a person, to protect themselves or others from harm, or to bring an incident or situation under control."

---

[1] The post is attached as **Exhibit B** to this complaint and was obtained from
https://www.facebook.com/WacoPoliceDepartment/posts/2887062328008971.

41. The General Order further requires that officers "shall use de-escalation techniques to gain voluntary compliance whenever practical" and "techniques shall be continuously developed, updated, and made part of the continuing training delivered to all police officers by the Department."

42. Despite Defendant City's representations of implementing and training extensive de-escalation policies, the latest training that Defendant Officer had on de-escalation was in February 2017.

### C. *Governor Abbott's Executive Order GA-29, July 3, 2020*

43. On July 3, 2020, Governor Abbott issued GA-29 which required the wearing of a face covering unless a person is "maintaining a safe distance from other people not in the same household."

44. The Executive Order superseded any inconsistent local orders and prohibited any law enforcement official from detaining, arresting, or confining in jail "any person for a violation of this executive order" other than to enforce trespassing laws.

45. Following the issuance of this Executive Order, Officer Garen Bynum, a public information officer with Defendant City, reported that officers carry extra masks to provide them to citizens who do not have them.

## COUNT I
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
## (Fourth Amendment—Unlawful Detention)

46. Plaintiff incorporates herein all prior allegations.

47. At all times relevant, Defendant Officer was acting under color of state law.

48. The Fourth Amendment requires police officers have reasonable suspicion to effectuate a detention.

49. Refusal to wear a face covering on private property is not reasonable suspicion that a crime has been committed.

50. No calls were placed about Plaintiff committing a crime. Defendant Officer happened to be in the area and became upset when challenged on whether a face covering was required by ordinance.

51. Defendant Officer thus had no reasonable suspicion to detain Plaintiff.

52. Defendant Officer continued to have no reasonable suspicion that a crime had been committed. Defendant Officer continued to detain Plaintiff despite his compliance with Defendant's instructions.

53. Despite not having any reasonable suspicion that a crime had been committed, Defendant Officer continued to detain Plaintiff by holding Plaintiff at taser-point and threatening to "drop" him.

54. When other officers arrived, Defendant Officer, despite not having any reasonable suspicion that a crime had been committed, ordered the officers to put Plaintiff on the ground and cuff him.

55. Defendant Officer's detention of Plaintiff was objectively unreasonable and not supported by any legal basis.

56. At all times relevant, Defendant was required to obey the laws of the United States.

57. At all times relevant, Plaintiff had a clearly established right to be free from unlawful detentions.

58. At all times relevant, Defendant intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently detained Mr. McCain without a legal basis.

59. As a proximate result of Defendant's illegal and unconstitutional acts, Mr. McCain was harmed and suffered damages.

## COUNT II
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment — Retaliatory Arrest)

60. Plaintiff incorporates herein all the prior allegations.

61. Defendant Officer intentionally, knowingly, maliciously, recklessly, unreasonably, and/or gross negligently detained, handcuffed, and/or arrested Plaintiff without any lawful basis with the intention to deter Plaintiff from exercising his constitutional rights.

62. These adverse acts were done in retaliation to Plaintiff lawful exercise of his protected right to express himself.

63. Plaintiff's retaliatory arrest was based on Defendant Officer's knowing, deliberate, and reckless disregard for the truth, wherein he falsely asserted Plaintiff was under arrest. The retaliatory arrest was made and continued under the color of law, study, diligence, or basis. Further, the Defendant Officer had no knowledge of any fact or circumstance which would lead a reasonable person to believe that Plaintiff committed any offense, whatsoever.

64. Defendant Officer intentionally arrested Plaintiff with the intention of deterring Plaintiff from engaging in First Amendment activities. Defendant Officer's verbal ideations and forcible detention of Plaintiff far exceeded the bounds of reasonable.

65. Defendant Officer's conduct in detaining and aiming a taser at Plaintiff's skull deprived Plaintiff of his liberty without his consent, probable cause, legal justification, just cause, or any other legally valid reason.

66. Plaintiff was harmed and suffered damages a result of Defendant Officer's conduct.

**COUNT III**
**VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983**
**(Fourth Amendment – Excessive Force)**

67. Plaintiff incorporates herein all the prior allegations.

68. Acting under color of law and the authority of City of Waco, Defendant Officer, intentionally, negligently, and with complete and deliberate indifference for Plaintiff's rights caused Plaintiff to be deprived of his constitutional rights, including but not limited to, those under the Fourth Amendment by using a degree of force that was objectively unreasonable under the circumstances.

69. The force used by Defendant Officer in violation of Plaintiff's rights to be free of an unreasonable seizure under the Fourth Amendment.

70. Defendant Officer's use of force was objectively unreasonable.

71. Defendant Officer failed to give Mr. McCain a lawful order as he did not have reasonable suspicion to detain Plaintiff.

72. Defendant Officer did not have probable cause or reasonable suspicion to detain Mr. McCain.

73. Defendant Officer's act of aiming his taser at Plaintiff was objectively unreasonable use of force under the circumstances.

74. At all times relevant, Defendant was required to obey the laws of the United States.

75. At all times relevant Plaintiff had a clearly established right to be free from excessive force of this nature.

76. At all times relevant, Defendant intentionally, knowingly, maliciously, recklessly, unreasonably, and/or grossly negligently used excessive force in aiming his taser at Plaintiff.

77. Plaintiff was harmed and suffered damages a result of Defendant Officer's conduct.

## COUNT IV
## VIOLATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983
### (First Amendment—Retaliation for Protected Speech)

78. Plaintiff restates and incorporates by reference each and every allegation set forth in all prior paragraphs.

79. At all times relevant herein, Defendant Officer was acting under color of state law.

80. Mr. McCain has a protected First Amendment right to speak to officers and ask why she is being stopped or detained.

81. Mr. McCain was engaged in constitutionally protected conduct when he asked Defendant Officer whether he was aware of the Governor's executive order pertaining to the wearing of face coverings in response to Defendant threatening to arrest him.

82. In retaliation for his protected conduct, Defendant Officer intentionally, knowingly, maliciously, recklessly, and/or unreasonably detained Plaintiff at taser-point and caused Plaintiff to be handcuffed. He then cited Plaintiff with a warning. All of these actions were without a warrant, probable cause, or any legal basis.

83. Defendant intentionally, knowingly, maliciously, recklessly, and/or unreasonably retaliated against Mr. McCain for seeking information regarding Defendant Officer's reasoning for stopping and detaining him.

84. Mr. McCain had a clearly established constitutional right to not to be retaliated against for asking why he was being detained.

85. Defendant had no knowledge of any facts or circumstances which would lead a reasonable person to believe that Mr. McCain committed any offense. To the contrary. Defendant Officer acknowledged that he was aware of the current executive orders but did not care what they

stated. Defendant Officer also acknowledged to others earlier in the day that it was unconstitutional to force anyone to wear face coverings.

86. Such a retaliation would serve as a deterrent to a person of ordinary firmness from engaging in such protected conduct.

87. The retaliation was motivated at least in party by the protected speech.

88. There is a causal connection between Mr. McCain's constitutionally protected conduct and the adverse retaliatory actions taken by the Defendant.

89. The Defendant's acts deprived Plaintiff of the rights, privileges, and immunities guaranteed to citizens of the United States by the First and Fourteenth Amendments to the Constitution of the United States, and in violation of 42 U.S.C. § 1983.

90. As a proximate cause of the illegal and unconstitutional acts of the Defendant, Plaintiff was harmed and suffered damages as a result.

## COUNT V
## VIOLATION OF CIVIL RIGHTS UNDER U.S.C. § 1983
## (Fourth Amendment – False Arrest/False Imprisonment)

91. Plaintiff incorporates herein all prior allegations.

92. Defendant Officer willfully detained Plaintiff by accosting him at taser point and ordering him under arrest under the color of law.

93. Plaintiff did not consent to the detainment and made known he did not consent to the detainment of his person by Defendant Officer.

94. Defendant Officer did not have probable cause to detain or arrest Plaintiff. No reasonable officer could have believed there was probable cause to make an arrest.

95. Defendant Officer restrained and arrest Plaintiff without a warrant or other legal authority.

96. As a direct result of Defendant Officer's conduct, Plaintiff was harmed and suffered damages.

## COUNT VI
## VIOLATION OF CIVIL RIGHTS UNDER U.S.C. § 1983
## (Municipal Liability – Unlawful Policy / Failure to Train)

97. Plaintiffs incorporate herein all prior allegations

98. A municipality is liable under 42 U.S.C. § 1983 if the acts that violated a person's right were undertaken pursuant to the municipality's policies and customs.

99. Defendants City directly caused the constitutional violations suffered by Plaintiff and is liable for the damages caused as a result of the conduct of the individual Defendant. The conduct of the individual Defendant officer was a direct consequence of the policies and practices of Defendant City.

100. At all times relevant in this complaint, direct and proximate cause of the damages and injuries complained of were caused by policies, practices and /or customs developed, implemented, enforced, encouraged, and sanctioned by Defendant City, including the failure:

   a. To adequately supervise and train its officers and agents, including individual Defendant, thereby failing to adequately discourage further constitutional violations on the part of its police officers;

   b. To properly and adequately monitor and discipline its officers, including individual Defendant; and

   c. To adequately and properly investigate citizen complaints of police misconduct and instead, acts of misconduct were tolerated by the Defendant City. Defendant City has acted with deliberate indifference to the constitutional rights of the Plaintiff. As

a direct and proximate result of the acts as stated herein by each of the Defendant each of the Plaintiff's constitutional rights have been violated.

101. This failure to supervise, discipline, or control its officers demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the Defendant acting the way he did as outlined in this lawsuit.

102. Further the de facto unwritten policy, procedure, or custom, described herein, including arresting individuals who engage in protected conduct for false reasons, demonstrates deliberate indifference to the constitutional rights of Plaintiff and is directly responsible for the individual Defendant acting the way he did as outlined in this complaint.

103. Defendant City's supervision of Defendant Officer, was deficient as it to relates to excessive force, unlawful arrests, inadequate training, and failure of oversight. Defendant City made a deliberately indifferent choice to not provide adequate supervision of this officer, and other officers similarly situated, to ensure that such actions are not repeated, and that is exactly why Defendant Officer, and other officers similarly situated, were enabled and in fact emboldened to violate the plaintiffs' Constitutional rights as outlined herein.

104. Defendant City represented to the public that its officers were trained in de-escalation policies and that officers were also trained in how to interact with citizens concerning face coverings.

105. Defendant City failed to properly train Defendant Officer in de-escalation policies.

106. Defendant City failed to properly train Defendant Officer on mask mandates and how to interact with citizens concerning face coverings.

107. Defendant City was aware of Defendant Officer's disciplinary history, and knew that Defendant Officer required training and oversight—especially with community interactions.

108. Despite being aware of the Defendant Officer's inability to effectively interact with citizens while on duty, Defendant City failed to properly train and supervise Defendant Officer in how to interact with citizens.

109. As a proximate result of the unconstitutional acts and omissions of Defendant City, Plaintiff was harmed and suffered damages for his physical, mental, and emotional injury and pain, mental anguish, humiliation, and embarrassment.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter judgment in favor of Plaintiff and against Defendants as follows.

　　a. Compensatory damages; and

　　b. Punitive damages; and

　　c. Reasonable Attorney's fees, costs, and expenses in bringing this action; and

　　d. Any other relief, equitable or otherwise, that is fair and just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all triable issues, per Fed. R. Civ. P. 38(b).

Respectfully Submitted,

**GRABLE GRIMSHAW MORA PLLC**

*/s/ Brandon J. Grable*
**BRANDON J. GRABLE**
Texas State Bar No. 24086983
brandon@ggm.law
**AUSTIN M. REYNA**
Texas State Bar No. 24118645
austin@ggm.law
1603 Babcock Road, Suite 280
San Antonio, Texas 78229
Telephone: (210) 963-5297
Facsimile: (210) 641-3332

## **CERTIFICATE OF SERVICE**

  I hereby affirm that on this 24th day of September 2021, that the foregoing document was filed with the Court's CM/ECF electronic filing system, and that a copy of said document was served upon all parties of record, via electronic service.

*/s/ Brandon J. Grable*

**EXHIBIT B**



**Waco Police Department**
June 9, 2020

Good afternoon Waco!

We have had a number of citizens ask us to look into the "8 Can't Wait" use of force policy suggestions for law enforcement. The Waco Police Department wants you to know that we recognize that these suggestions are key to maintaining the trust of our community. These suggestions have been reviewed and our response to them is as follows. We also want to ensure you that we are constantly reviewing our policies and practices. For any additional information please see Chief Ryan Holt's statement at the top of our Facebook page.

1. Ban chokeholds & strangleholds:
For more than 20 years, Waco PD has not permitted or trained these types of restraints to gain submission or control.

2. Require De-escalation:
De-escalation is part of the culture and ongoing training for all department staff at the Waco Police Department. The policy was developed in alignment with the 21st Century Policing Report and concepts of Procedural Justice that ensures actions by our officers are proportional, legal, authorized, necessary and ethical.

3. Require warning before shooting:
Waco PD policy states that an officer should identify themselves and state their purpose that force may be used, except in situations where doing so places any person at a greater risk of harm.

4. Exhaust all other means before shooting:
Our policy states we will only use the amount of force that appears reasonably necessary given the facts and circumstances of the encounter.

5. Duty to intervene:
Any officer that observes a person being mistreated in any way, has a duty to intervene by verbal or physical means, and immediately report to supervision.

6. Ban shooting at moving vehicles:
Waco PD officers are not permitted to shoot at a moving vehicle unless the person in the vehicle is attempting to use the vehicle as a means of deadly force towards the officer or another person.

7. Require use of force continuum:
Waco PD officers receive extensive de-escalation training and are taught to only use the amount of force that is reasonably necessary in response to the perceived threat.

8. Require comprehensive reporting:
ALL use of force incidents at Waco PD are documented and reviewed by a chain of supervisors, then analyzed by Professional Standards, Training, and the Chief of Police.

Ofc. Bynum